UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANIEL J. BIBAUD,

    Petitioner,

v.

JOHN J. HOFFMAN et al.,

    Respondents.

Civ. No. 15-5879 (FLW)

**OPINION**

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODUCTION

Petitioner, Daniel J. Bibaud ("Bibaud" or "Petitioner"), is proceeding by counsel in this habeas proceeding under 28 U.S.C. § 2254. Respondents, John J. Hoffman, Raymond P. Martinez, and Jennifer Velez (collectively, "Respondents"), filed an answer to the Petition. (Ans., ECF No. 10.) Bibaud has filed no timely reply. Having considered the parties' submissions, and for the following reasons, the petition is denied.

## II. BACKGROUND

**1. Underlying Facts and Proceedings**

The Superior Court of New Jersey, Appellate Division, summarized the underlying facts as follows:

> On January 17, 2012, defendant was stopped by police while operating a motor vehicle in Manchester Township. As a result of the stop and a subsequent field investigation, defendant was arrested and transported to police headquarters where he submitted to an Alcotest breath examination. The Alcotest recorded defendant's blood alcohol concentration (BAC) at 0.10 percent.
> Defendant was charged with driving while intoxicated (DWI), reckless driving, failure to maintain lane, and speeding, in violation of *N.J.S.A.* 39:4-50, *N.J.S.A.* 39:4-96, *N.J.S.A.* 39:4-

> 88(b), and *N.J.S.A.* 39:4-98, respectively. Defendant pled guilty to
> *N.J.S.A.* 39:4-50 [Driving While Intoxicated]. The remaining
> charges were dismissed.

(Ans., Ex. I, Op. (Feb. 3, 2015), *State v. Bibaud*, No. A-0753-13T3 (N.J. Super. Ct. App. Div.), ECF No. 10-9, at 1–2 (available at *State v. Bibaud*, 2014 WL 7735817).

Although Bibaud pleaded guilty to Driving While Intoxicated ("DWI") before the Manchester Township Municipal Court, his plea was "conditioned on his right to appeal the issue of the denial of the jury trial . . . , the issue concerning whether the digital data was complete," and various other issues. (*See* Response to Order to Show Cause, Ex., Tr. of Hr'g (Jan. 23, 2013), *State v. Bibaud*, Docket Nos. MTC 083884, MTC 083885, MTC 083886, & MTC 083887 (Manchester Twp. Mun. Ct.), ECF No. 3-4, at 8–9.) Bibaud's admission to the offense was also made "with the proviso it's based on the per se reading [of the Alcotest], not on that he was under the influence." (*See* ECF No. 3-4 at 10–12.) The Municipal Court imposed the minimum sentence for a third or subsequent offense, comprising a $1006 fine, various fees totaling $358, a ten-year license suspension, 12 hours of Intoxicated Driving Resource Center (IDRC) education, use of an interlock device, and 180 days in jail, 90 of which could be served in in-patient alcohol rehabilitation treatment. (*Id.* at 12–13.) The Municipal Court granted a request to stay the sentence, except for the license suspension, pending appeal. (*Id.* at 13–15.)

Bibaud then appealed the Municipal Court's decisions on pretrial motions and his conviction to the Superior Court of New Jersey, Law Division, Ocean County, raising the issues he had reserved. (*See* Ans., Ex. B, Br. & App'x, ECF No. 10-2; Ans., Ex. D, Letter Br., ECF No. 10-4.) That court denied the appeal upon *de novo* review, but granted an additional stay of Bibaud's jail sentence. (Ans., Ex. E, Order Denying Mun. App. (Aug. 27, 2013), *State v. Bibaud*, Mun. App. No. 07-13 (N.J. Super. Ct., Law Div., Ocean Cty.), ECF No. 10-5.)

Bibaud then appealed this decision to the Appellate Division, raising three issues: (1) that Bibaud's Alcotest results should have been excluded as the State failed to show that he was continuously observed for the preceding 20 minutes; (2) that Bibaud was denied his right to explore the reliability of the Alcotest because the State did not provide him comprehensive Alcotest data and repair records; and (3) that Bibaud was entitled to a jury trial due to the severity of penalties for a third or subsequent DWI. (*See* Ans., Ex. F, Br. & App'x, ECF No. 10-6.) On February 3, 2015, the Appellate Division affirmed the Law Division's order and vacated the stay of the sentence. (*See* ECF No. 10-9.) The Supreme Court of New Jersey subsequently denied certification.[1] (Ans., Ex. J., Denial of Certif. (May 22, 2015), *State v. Bibaud*, No. C-936 Sept. Term 2014, 075555 (N.J. Sup. Ct.), ECF No. 10-10 (available at *State v. Bibaud*, 221 N.J. 566)).

**2. The Habeas Petition**

Bibaud, by counsel, filed a habeas petition with this Court on July 28, 2015, which raises two grounds for relief:

- GROUND ONE – that "the penalties faced by plaintiff-petitioner demonstrate a legislative intent to treat a third of [sic] subsequent offense of operating a vehicle while under the influence of alcohol as a serious offense mandating the protections of a jury trial"; and

- GROUND TWO – that "by failing to provide downloadable data for all functions run on the Alcotest instrument used to test

---

[1] Bibaud indicates, in his Petition, that he sought certification from the Supreme Court only on the issues of denial of a jury trial and failure to produce complete Alcotest data, but not on the issue of whether he was continuously observed for 20 minutes before being tested. (*See* Pet., ECF No. 1, ¶ 9(g)(6).)

3

> plaintiff-petitioner's breath, the State breached its duty to
> protect plaintiff-petitioner's right to assure the reliability of his
> breath test result and violated plaintiff-petitioner's rights to due
> process and a fair trial."

(Pet., ECF No. 1, ¶ 12 (capitalization rectified).)

As the Petition did not explicitly address the question, the Court ordered Bibaud to show cause why the Petition should not be dismissed for failure to satisfy the custody requirement of 28 U.S.C. § 2254. (Order to Show Cause, ECF No. 2.) In response, Bibaud filed a declaration recounting his 180-day jail sentence and indicating that he had not yet completed the required 12 hours of IDRC programs.[2] (ECF No. 3 ¶¶ 6–7.) The Court thereafter, without finding that Bibaud had conclusively established that he satisfied the in-custody requirement, permitted the action to proceed and directed Respondents to answer the Petition. (Mem. & Order, ECF No. 5.) Respondents filed an Answer on June 14, 2018. (ECF No. 10.) Bibaud has not filed any reply to the Answer.

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 2254(a), a court may consider a claim alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner has the burden of establishing each claim in such a petition. *See Eley v. Erickson*, 712 F.3d 837, 846–47 (3d Cir. 2013). Generally, a federal court may not grant

---

[2] The Court notes that Bibaud's response was ambiguous as to the status of his jail sentence, in that it did not state when Bibaud may have started or completed serving that sentence. (*See* ECF No. 3.) The Court notes that, if Bibaud had started serving his 180-day sentence on February 3, 2015, when the Appellate Division dissolved the stay, the sentence, if served in full, would have run through August 2, 2015.

4

a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

Under § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244, ("AEDPA"), federal courts must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772 (2010). Where a state court adjudicated a petitioner's federal claim on the merits, a federal court

> ha[s] no authority to issue the writ of habeas corpus unless the [state court's] decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)). As an *unreasonable* application of federal law is distinguishable from a merely *incorrect* application of federal law, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Renico*, 559 U.S. at 773 (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). The Supreme Court has noted that the habeas standard creates a "'substantially higher threshold' for obtaining relief than *de novo* review." *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

"For the purposes of Section 2254(d), a claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that 1) finally resolves the claim, and 2) resolves that claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (internal quotation marks and brackets omitted). "'[C]learly established law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the Supreme Court's] decisions,'" as of the time of the relevant state-

5

court decision. *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). A decision is "contrary to" a Supreme Court holding for the purposes of § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams*, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In conducting a review under § 2254(d)(1), a court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of AEDPA necessarily apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court may nevertheless deny them on the merits under § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir.

2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV. ANALYSIS

### a. Ground One – Trial Court's Failure to Grant a Jury Trial

In Ground One, Bibaud claims that the severity of the penalties for a third or subsequent DWI signal that it is considered a serious offense, requiring trial by jury. (ECF No. 1 ¶ 12, Ground One.) He emphasizes that he had to serve "a sentence including 180 days in jail; license suspension of 10 years; fines, penalties, surcharges, and other fees that can exceed $5,000; [Ignition Interlock Device] installation requirements during and after his driving privilege revocation; mandatory attendance at an IDRC; and other administrative fees of several hundred dollars." (*Id.*) He also notes that he will suffer other collateral consequences, such as increased insurance premiums. (*Id.*)

As the Petition filed by Bibaud's counsel cites to no federal case, statute, or constitutional provision, it is ambiguous what basis for relief under § 2254 Bibaud advances—*i.e.*, in what way Bibaud contends that the Appellate Division's denial of his appeal was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Hence, Bibaud fails to make any meaningful attempt to meet his burden of demonstrating that the state-court decisions were contrary to, or an unreasonable application of, clearly established federal law or that they were premised upon an unreasonable determination of the facts. *See Eley*, 712 F.3d at 846–47 ("We may, at last, grant *habeas* relief only if the petitioner demonstrates that the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))).

Nevertheless, the Court examines the Appellate Division's analysis of this issue. In addressing this question on direct appeal, it explained,

> Defendants in DWI matters are not entitled to a jury trial on the charges. *See State v. Hamm*, 121 *N.J.* 109, 112–30 (1990), *cert. denied*, 499 *U.S.* 947, 111 *S. Ct.* 1413, 113 *L. Ed.* 2d 466 (1991); *see also State v. Stanton*, 176 *N.J.* 75, 87, *cert. denied*, 540 *U.S.* 903, 124 *S. Ct.* 259, 157 *L. Ed.* 2d 187 (2003) (noting there is no right to a jury trial on DWI or other charges under Title 39). Defendant argues that since the Legislature amended DWI statutes after *Hamm* he is entitled to a jury trial. As we noted in *Robertson* and echo here, "we are unconvinced." *Robertson*, *supra*, 438 *N.J. Super.* at 73.

(ECF No. 10-9 at 9.) The New Jersey Supreme Court cases cited therein (*Hamm* and *Stanton*) assessed this issue under the United States Supreme Court's holding concerning the applicability of the Sixth Amendment jury right to similar DWI charges in *Blanton v. City of North Las Vegas*, 489 U.S. 538 (1989). *See State v. Stanton*, 176 N.J. 75, 87–88 (2003); *State v. Hamm*, 121 N.J. 109, 112–30 (1990).

In *Blanton*, the Supreme Court considered DWI charges under Nevada law, which permitted sentences of up to six months' imprisonment, fines up to $1000, 90-day license suspensions, and required alcohol abuse education courses. *Blanton*, 489 U.S. at 539–40. The *Blanton* Court found that an offense carrying a maximum prison sentence of six months or less is presumed to be a petty offense, which does not require a jury trial. *Id.* at 541–43. It further held that

> [a] defendant is entitled to a jury trial [when charged with an offense carrying a maximum prison term of six months or less] only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one.

8

*Id.* at 543.  It concluded that defendants charged under Nevada's DWI law were not entitled to a jury trial because, as the maximum prison sentence was six months, it was presumed to be a petty offense and because the additional penalties did not show "that the Nevada Legislature has clearly indicated that DUI is a 'serious' offense." *Id.* at 543–44.  Among other observations, the Supreme Court noted that the $1000 fine was "well below the $5,000 level set by Congress in its most recent definition of a 'petty' offense." *Id.* at 544.

In 1993, the Supreme Court applied the holding in *Blanton* to find that driving under the influence in a national park in violation of 36 CFR § 4.23(a)(1) was a petty offense that did not require a jury trial. *United States v. Nachtigal*, 507 U.S. 1, 2–5 (1993).  Violation of that code section carried a maximum sentence of six months' imprisonment and a $5000 fine, but the sentencing court had the option of sentencing a violator, in place of incarceration, to up to five years of probation. *See id.* at 2.  The Court found the offense to be presumptively petty, and held that "[t]he additional penalties imposed under the regulations are not sufficiently severe to overcome this presumption." *Id.* at 4–5.  While noting an argument that the potential term of probation rendered the offense serious, the Supreme Court held that, "[l]ike a monetary penalty, the liberty infringement caused by a term of probation is far less intrusive than incarceration." *Id.* at 5.

While *Blanton* and other cases discussing similar issues have referenced the $5000 federal cap on fines for petty offenses, at least four Circuit Courts have found that the potential for fines significantly exceeding that amount does not suffice to render the offense serious and trigger the requirement of a jury trial. *See United States v. Dugan*, 667 F.3d 84, 85–87 (2d Cir. 2011) (potential penalty of six months' incarceration plus $10,000 fine does not require jury trial); *United States v. Clavette*, 135 F.3d 1308, 1309–11 (9th Cir. 1998) (potential penalty of six

months' incarceration plus $25,000 fine does not require jury trial); *United States v. Unterburger*, 97 F.3d 1413, 1415–16 (11th Cir. 1996) (potential penalty of six months' incarceration plus $10,000 fine does not require jury trial); *United States v. Soderna*, 82 F.3d 1370, 1378–79 (7th Cir. 1996) (same). On the other hand, the Court of Appeals for the Eighth Circuit applied *Blanton* to find that a potential 15-year driver-license suspension in addition to six months' incarceration was sufficient to trigger the Sixth Amendment jury right. *Richter v. Fairbanks*, 903 F.2d 1202, 1204–05 (8th Cir. 1990). Of course, the task presently before this Court is not to undertake a *de novo* review of the question whether drivers charged with a third New Jersey DWI have a right to a jury trial; it is, instead, to determine whether the Appellate Divisions' holding that Bibaud had no right to a jury trial was contrary to or an unreasonable application of clearly established federal law.[3] *See Parker*, 567 U.S. at 40.

Thus, while some reasonable jurists might find that third-time New Jersey DWI offenders have a jury right under *Blanton*, this does not mean that it was unreasonable for the Appellate Division to conclude otherwise. Indeed, this Court, in previously addressing the very question presented here, declined to find that the potential penalties for a third-time DWI offender "constitute 'the rare situation where a legislature packs an offense it deems serious with onerous penalties that nonetheless do not puncture the 6-month incarceration line.'" *Sassano v. Brown*, Civ. A. No. 05-5258 (FLW), 2006 WL 3674724, at *6–7 (D.N.J. Dec. 13, 2006) (quoting *Blanton*, 489 U.S. at 543–44). This Court's prior finding is also consistent with the subsequent comprehensive review of the issue by the Supreme Court of New Jersey, I n *State v. Denelsbeck*, 225 N.J. 103 (2016). That Court, applying the federal standard under the Sixth Amendment to circumstances practically indistinguishable from those herein, first found that, under the revised

---

[3] While I am constrained to review this petition under this standard, I remark that should this be a *de novo* review, a different result may have been decided.

statute, a third or subsequent DWI did not permit confinement of over six months and thus remained a presumably petty offense. (*Id.* at 119–22, 125–26.) The Court weighed the burdens of the other associated penalties—license suspension, installation of an ignition interlock device, criminal fines and fees, as well as civil monetary penalties—and concluded that, although "the State has . . . reached the [outer] limit of additional penalties that may be added for a third or subsequent DWI offense without triggering the right to a jury trial," the penalties for a third or subsequent DWI as they presently exist "do not tip the balance to classify it as 'serious.'" [4] *Id.* at 122–26.

For all of the reasons outlined above, as well as the reasons previously discussed by this Court when presented with identical arguments in *Sassano*, 2006 WL 3674724 at *5–7, I find that the Appellate Division's decision was neither contrary to nor an unreasonable application of clearly established federal law.[5] As in *Blanton*, because the maximum possible prison sentence faced by third-time New Jersey DWI offenders is six months or less, the offense is presumed to be petty, and the Appellate Division need to have found a jury right only if it determined that the additional penalties clearly indicated the legislature's intent to make the offense a serious one. *See id.* at 543–44. Thus, to warrant relief, Bibaud would have to demonstrate that the Appellate Division's determination that the other potential penalties did not render the offense serious was an unreasonable application of the holding in *Blanton*. *See Williams*, 529 U.S. at 408–09.

---

[4] The United States Supreme Court subsequently denied Denelsbeck's petition for *certiorari*. *Denelsbeck v. New Jersey*, 137 S. Ct. 1063 (2017).

[5] As the question of the right to a jury revolves entirely around the offenses charged and the potential maximum penalties, the Court does not perceive any factual determination related to this issue made by any of the state courts. *See Baldwin v. New York*, 399 U.S. 66, 68 (1970). Accordingly, Bibaud seemingly could not claim an unreasonable determination of facts in light of the evidence, under § 2254(d)(2).

Bibaud has not made such a showing. Accordingly, the Court denies habeas relief on Ground One.

### b. Ground Two – State's Failure to Produce Comprehensive Alcotest Data

In Ground Two of Bibaud's Petition, he contends that the State violated his rights to due process and a fair trial by failing to turn over "downloadable data for all functions run on the Alcotest instrument used to test [Bibaud's] breath." (ECF No. 1 ¶12, Ground Two.) As in Ground One, Bibaud's Petition identifies no specific federal law or precedent as the basis for this claim, instead providing an extensive explanation of the data files generated by Alcotest machines. (*See id.*) The Appellate Division interpreted this issue, when raised on direct appeal, as partly a claim for failure to disclose exculpatory evidence, under *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* ECF No. 10-9 at 7–8.) It stated,

> We recently concluded that the State had no duty under discovery rules to disclose such evidence, and defendant had no constitutional right to its disclosure under Brady v. Maryland, . . . because such evidence was neither relevant nor material. State v. Robertson, 438 N.J. Super. 47, 66–73 (App. Div. 2014).
>
> * * * *
>
> Based on our reasoning in Robertson, defendant's arguments with respect to repair records and erased data downloads lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

(ECF No. 10-9 at 7–8.) In *State v. Robertson*, 438 N.J. Super. 47 (App. Div. 2014), the reasoning of which the Appellate Division adopted in rejecting Bibaud's claim, the court denied a claim that the State had an obligation to turn over the types of Alcotest data at issue here both because they were not material under *Brady* and because production was not required by state evidentiary rules. *See Robertson*, 438 N.J. Super. at 67–73.

The United States Supreme Court, in *Brady*, held that the State has an affirmative duty to disclose material evidence favorable to a defendant. *See Brady*, 373 U.S. at 85–88. Evidence is material for the purposes of *Brady* if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, Bibaud's highly technical arguments concerning the fact that certain Alcotest data were routinely erased, when they could theoretically have been maintained, do not meet his burden of showing that the Appellate Division's adjudication of his claim warrants relief under § 2254(d). Bibaud makes no showing that the Appellate Division's finding that the unproduced Alcotest materials were not material ran contrary to or was an unreasonable application of *Brady* or any other clearly established federal law. Nor does he show that this outcome was based on an unreasonable determination of the facts in light of the evidence.[6] Accordingly, habeas relief is denied on Ground Two.

## V.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a litigant may not appeal a final order in a § 2254 habeas proceeding unless the judge or a circuit justice issues a certificate of appealability ("COA"). That section further directs courts to issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

---

[6] Additionally, to the extent that the Appellate Division's reliance on state evidentiary rules as an alternative basis for denying Bibaud's appeal on this issue indicates an independent and adequate state-law grounds for the result, this Court would lack jurisdiction to consider the issue at all. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, reasonable jurists would not find the Court's ruling debatable. Accordingly, no certificate of appealability shall issue.

## VI. CONCLUSION

For the foregoing reasons, the Petition is denied. No certificate of appealability shall issue. An appropriate order accompanies this opinion.


DATED: September 27, 2018                    /s/ Freda L. Wolfson
                                             FREDA L. WOLFSON
                                             United States District Judge